Good morning, Your Honor. Barry Morris appearing on behalf of the appellant Michael Mendez. There are two issues I wish to discuss, and I wish to reserve four minutes for rebuttal. The first issue is the issue of the structural error. The second issue has to do with the notice of appeal. Frankly, I'm a little mystified as to what happened in the lower court and why it happened. This court issued the decision in Gibson v. Ortiz, which is about as clear as any decision coming from this court can be. There will be plenty of people who assure you that's not very clear at all, so. Well, you know, when I read in the decision that CALJIC 2.501 permitted the jury to find Gibson guilty of the charged sexual offense by merely a preponderance of the evidence and therefore constituted structural error, it seems to me that's the end of the game. Now, I grant you there is some extraneous discussion having to do with the order of the instructions and the evidence and the argument and so on and so forth, but when all is said and done, the holding of the court is crystal clear. Well, perhaps to you, but your task is to persuade us that it wasn't properly clear to the district court, so. Okay. I understand that. But I think what happened here, first of all, this is a terrible instruction. I mean, it's terrible on many grounds. It's terrible substantively because it allows the jury to do what juries historically have been prohibited from doing, namely to convict a person on an alleged religious offense. But you don't really challenge on that ground because the Supreme Court hasn't clearly said that yet. I understand that. I understand. I'm just setting the context of it. But what makes this instruction really terrible is, first, it says that you can use as evidence of a disposition of prior offenses. And then it says, if you find that the defendant had disposition, you may but are not required to infer that he was likely to commit and did commit crime or crimes of which he is accused. So you – and then it later on says that the burden of proof in this regard is by the preponderance of the evidence. So what you're taking is a dubious proposition to begin with, namely disposition proves guilt, and then you're supplementing it and aggravating and potentiating it with the requirement that it only be proved by preponderance of the evidence. Well, counsel, I guess where I would like to move you, if I could, rather than going through the instructions themselves, what we have here is a habeas case. Right. We have the habeas. We have the State court then trying to interpret what they need to do in Winship and others as to the burden of proof. And, frankly, the district court in this particular case found many critical distinctions between Gibson and this particular case, suggesting that based on those distinctions, in other words, things that happened differently at trial, that is a totally different situation, as the instructions given as a whole did not relieve the jury of its duty because nobody ever had in those instructions anything that said they had to convict on any less than reasonable doubt. That was the last instruction given them, and so they ought to have got there. In closing argument, trial counsel argued it totally differently, suggesting that he accepted fully the responsibility of beyond a reasonable doubt, rather than in Gibson arguing that it was quite different. So the trial court or not the trial, the trial court at that time had a totally different situation, and now trying to decide if it matched up on a habeas review, this district court, pretty good district judge, giving pretty good justification said, understand that there may be a problem, understand that there might be a situation. But giving every benefit of the doubt to the trial court who's now trying to put this into perspective, there's a lot of differences here, so it isn't a violation. How do you respond to that? Very simply, Your Honor. The instruction that the jury was given is exactly the same as Gibson v. Ortiz. None of the other factors make any difference whatsoever. The order of the instructions is irrelevant in California. Why did we say it in Gibson, then? Why did the Court go on and make the observations that you tell us are extraneous? Now, are we free to read out of that opinion the parts that you don't like? No, Your Honor, and it's not for me to guess why the Court put all that stuff in there. If I were writing the opinion and I concluded that it was structural error, end of story. You don't have to discuss the other things. I agree. There's extraneous material in there, but the bottom line is not. No, no, no. You're not agreeing. You're asserting. I'm not saying it's extraneous. I say it's there. Oh, I agree. I understand what the Court's saying. But what I'm saying is, bottom line, you have the Court saying it's structural  That's the holding of the case. Everything else is. Let's assume it's structural error. Now, there is an exception to structural error, and that's the so-called absolute certainty rule. There are several cases, including from the Supreme Court, say if you are absolutely certain that, in this case, the jury didn't take the wrong route, then you may disregard it. Well, I don't know how anybody could be absolutely certain as to what the jury did. Well, in this case, they're dealing with convictions, aren't they? Yes, I understand. They're not actually trying up the other case. They have somebody who was convicted beyond a reasonable doubt of those other crimes. All right. Well, let me switch. I don't know if I should spend much time on the notice of appeal issue. Well, my worry, I guess, is, and I go with my colleague here, the bottom line is that this Court does not get involved in trying to redo what the trial court did, and neither does the Federal district court. All we do is try to use the habeas review. And you never talked about habeas review. You talk about a structural problem, but the habeas review standard is pretty important here. We don't just jump right over the top of the trial court and do what they have to do. We have to have a review, a standard of review that we give, give some benefit of the doubt to the State court. And we have to find that they have then, with all of those differences, done it. And you didn't. And you've never talked to that yet. Exactly, Your Honor. And my position is that when you have structural error, the standard review is exactly the same in habeas as it is on direct appeal. Because structural error means structural error. It means that the essence of the trial was wrong, and that nothing can correct it, and it's automatic reversal. Let me give you an example. Well, let me take you then one. The same district court who looked at this to determine if it met the habeas review gave you or counsel who was filing this appeal a pretty good break here. Counsel had filed an appeal by sending it in the mail, maybe even sent it in the mail two days. He calls the court on the very day it should have been filed, and they say, we don't have it. And he doesn't do anything. And so it isn't filed on time. And this district judge, who's now trying to apply the standard review on a habeas, gives that counsel pretty wide discretion and says, in my discretionary opinion, that was fine for you to just send this across town two different times and not get it here on time. When I have some pretty good decisions here, that palpable oversight and administrative failure generally falls short of the necessity filing that you have to have in order to get out of filing your appeal on the right day. Judge, I'm not saying the district court's a bad guy. I'm really not. What I'm saying is that the district court was wrong in ignoring Gibson v. Ortiz in that it's a structural error, and it makes no difference whether it's habeas or direct appeal. A structural error is that sort of rock-bottom point in which the system has gone wrong. But there's an exception. You know, I am not aware of an absolute certainty exception, Your Honor. And I — Quote, reversal may not be required if it is absolutely certain that the jury relied upon the legally correct theory to convict the defendant. That's Keating v. Hood from our court in 1999. I'll take your word for it, Your Honor. Isn't that the case here? Isn't it absolutely certain? We've got somebody who was convicted of these other offenses. But that's not — but we don't know what the jury did. We're not absolutely certain they didn't rely on this. There's no way of knowing that. Didn't rely on what? They didn't have to find that he was guilty of those other offenses by a preponderance. They had somebody who had already been convicted. The point of it is is that we're not absolutely certain that the jury did not rely — I'd like to save some time for rebuttal. I have very little, but. May it please the Court. I'll briefly touch on a notice of appeal question and then move on to the Gibson issue. On notice of appeal, I've cited to the Court various places where it is said in the case law that the reason for the delay is the most important factor. And here we just simply had an unaccountable lapse by the attorney, who I'm sure undoubtedly is a solid advocate. But in this particular case, he just failed to explain the reason for his delay. But don't we cut some slack to the district court when the district court excuses it? I mean, if the district court had said it's too late, I'm sure we'd uphold that. But when the district court says that he excuses it, don't we have to give some deference to that judgment? Well, it's an abuse of discretion standard here, but our position is that it was an abuse to grant the extra time. Jurisdiction of the court of appeals is a serious matter. And in this particular case, the counsel first decided to mail something when he had a very short window to get it there. And his second error, I would characterize it, was in doing nothing on the date when it was due, and he knew at 1 p.m. that it had not reached the court. Under the circumstances, I think the trial court abused its discretion and also applied a wrong standard, an incorrect standard, because if you'll notice in the district court's opinion, it indicates that the late filing was foreseeable, but it was not inevitable. And I just think that that's an improper standard for something like this. Before I came up here, I dropped my tax return in the mailbox. I'm hoping that it shows up, and usually it does, but sometimes it doesn't. Now, I don't have to worry about getting there by April 15, but you do trust the Postal Service for some things. Was it really so outrageous that he expected to get across town a few blocks in less time than it actually took? It was a long three-day weekend. I don't know if people take those things into account, but my understanding is he put it in the mailbox on Friday, it was due the following Tuesday, Martin Luther King Day intervened. I don't know that under those circumstances, for something as important as a notice of appeal and my client's rights, that I wouldn't do something like get a courier. And then certainly on the following day, on the due date, Tuesday, I think when I was informed that it had not reached the clerk's office or they hadn't seen it at 1 p.m., I'd get on my horse about that time. Counsel, it would be helpful to me if you would address the structural error issue and Judge Clifton's questions or comments about the absolute certainty precedent and whether that is a ground on which to resolve the error. I believe that that pretty much characterizes the state of the record here. It's very clear that the jury would not have utilized the challenged instruction in this particular case. So with that preface, let me start with Section 2254D. The federal courts on habeas review have a standard, which is whether or not the state courts have ruled contrary to or whether they have unreasonably applied United States Supreme Court precedent. Now, undeniably, we have Winship and Sullivan in cases of that type, which talk about improper instructions. And, of course, counsel for the other side has ably argued those points. But what we have here is a situation where Gibson is totally distinguishable. And for the distinction, some of which the court has already noted, Gibson identifies two particular problems here. One is what I'll call the standard of proof problem, having to do with a preponderance standard. And the other one is really the role of the priors in the determination of guilt. And I can characterize that as the shortcut problem. You find the priors, therefore you return a verdict of guilt. That could not possibly have happened here. And those ñ neither of the concerns that Gibson identified is present on this record. First of all, the Gibson reversal per se standard is inapplicable because it's predicated on the notion that this is an alternative legal theory case. You have the challenged instruction and you have the beyond a reasonable doubt instruction. Which one did they use? But that's not what happened in this case. Here, it is not equally likely that the verdict rested on an unconstitutional ground. It is not equally likely that the jury here utilized the challenged instruction to determine the defendant's guilt. And the reason that I say that is because in this particular case, and I'll try to get through this very quickly, is, number one, the proof of the priors consisted of documentary evidence and stipulations having conclusively established that the defendant was previously convicted. He ñ that establishes his convictions. There's no reason, consequently, for the jury to have determined whether or not the convictions were true. In many other contexts other than this, this Court allows prior recidivism to be considered. For example, in the ñ Well, I mean, the problem is that the jury was given the instruction. So they didn't have to look at the instruction because they had something that was demonstrated beyond a reasonable doubt. There was a conviction. The question in my mind becomes, does the instruction still open up a door that the jury might have gone through even though logically they didn't have to look at this instruction? They did hear it. They're told by the Court to listen to the instructions and follow them. In a perfect world, this instruction wouldn't have been given. It wasn't appropriate here, but it was given. So is there any concern that the jury might have thought, because of that, we don't have to find beyond a reasonable doubt? I can dispel that possibility by pointing to one other feature of the record, which is that in this particular case, the jury returned a guilty ñ a true verdict as to a sentence enhancement involving one of the priors. That, under the instructions that were given here, that sentence enhancement had to be found true beyond a reasonable doubt. There is no way that the jury would have possibly utilized the other challenged instruction to arrive at that verdict. There were other features of the record that also demonstrate that this challenged instruction was not utilized by the jury in this case. There were, for example, different victims of the priors ñ let me say it differently. The prior victims were not the same as the current victims. There's no ñ little likelihood that the jury would have determined that because the defendant had committed these sex offenses against these other people, that he would have committed the charged offenses against different victims. In argument, trial counsel conceded the truth of the priors, but interestingly, in the same passage which I've cited, he also stressed the beyond reasonable doubt standard. The prosecutor did not confuse or conflate the standards of proof or exaggerate the role of the priors. Under the circumstances, the state court ruling, if not its rationale, was not contrary to or an unreasonable application of the United States Supreme Court's precedent on this subject. This reversal per se standard of Gibson simply does not apply here, and at most the instructions were ambiguous, and for that reason, we would suggest that Gibson was incorrectly decided in the first place, or it should have been qualified to allow for a case like this. And for that proposition, I cite Cupp, which says at most instructions which tangentially undercut the beyond reasonable doubt standard, which is at most what happened here, can be found not to have violated the Constitution. Thank you. Mr. Morris. Briefly, absolute certainty, we never know with absolute certainty what a jury does. The fact that the Court applies the standard in some cases suggests it's confident in at least some cases that it knows. I understand that, but this is not one of those cases, because we have what we have is the instruction says if you find that he has the priors, you may infer that he's likely to be guilty. So we have the preponderance of evidence standard working its way in two times, one in finding the underlying prior, and two, the inference that he's likely to be guilty and is guilty. Well, let's focus on the particulars of this case. If it's true that the jury in fact found true beyond a reasonable doubt the fact of the priors, do we ever get to the preponderance standard? Does the jury ever get to the preponderance standard? Yes, because they find that after they find the defendant guilty. In other words, you don't get to the priors until you've made a verdict as to the underlying offense. So what they did after they found the guilty. And they found the prior conviction true beyond a reasonable doubt. I understand that, but once you sort of cross the Rubicon, as it were, and made the determination of guilt, the rest of it sort of follows. We can't really say that it's reliable to say once you found the defendant guilty that you found the priors beyond a reasonable doubt is a true, absolute certainty indication of what happened before you got there. And in fact, in this case, you have the jury told twice that they used a preponderance evidence standard. Once, the preponderance of evidence standard defined that the priors were true, and second, the preponderance of evidence standard defined that if he had the priors, then he's likely to and did commit the crime. It infects it on two levels. So you have the predisposition being by the preponderance of the evidence as well as the underlying priors being by the preponderance of the evidence, both of which violate Sullivan, both of which is a structural error, and both of which it makes no difference if it's on habeas or it's on direct appeal. If you don't have a lawyer, you don't have a jury, it doesn't matter where the review comes in. Those are both structural errors. Gibson was a habeas case, state conviction, no difference. The same instruction was given in Gibson as given in this case. The Court could not have been clearer that if you give this instruction, it's structural error. There is no case in this circuit where that instruction was given that has held that it was harmless error under any circumstances. And with that, as to the mailing, you know, one, it's almost a spitting distance, but the difference between where you put it in the post office box and here, normally expect one day, whether it's one day, two days, three days. This is the kind of thing that the Court gives discretion to the lower court to do. It's the kind of thing you don't want to. You've exceeded your time. We think we know your point on that. All right. I thank both counsel for the argument. The case just argued is submitted.
judges: Gould, Clifton, Smith